WILLIAM McCAMMON ET AL. TRUSTEES, ETC. *v.* PRUDENCE SUMMONS ET AL.

(No. 8,821.)

1. A wife sustains the relation of *quasi* creditor as well as that of next of kin in the distribution of her husband's personal estate.

2. A husband can not leave his property to others by will unless his estate is charged with an honorable maintenance for his wife; nor can her right be defeated by a voluntary conveyance of his personalty to trustees for the benefit of his grandchildren, when made with the intent to deprive her of her portion thereof after his decease.

SPECIAL TERM.—Action in the nature of a bill in equity, to enforce a trust, seeking the intervention of the court to give a legal interpretation of its provisions.

The facts are these: On February 28, 1858, John Blair Summons, then lying dangerously sick at the Spencer House, in the city of Cincinnati, made his will, by which his whole real estate was devised to his grandchildren, subject to the payment of one-third of the rents to his wife. No mention is made of his personal estate, but there is a condition inserted, that the devise to Prudence Summons, his wife, shall be inoperative, unless she releases her right of dower; expressing the purpose also, " that the allowance to her shall be in lieu of any and all claims or demands upon her husband's estate." Within an hour or two after the execution of his will, he signs a certain deed of trust which is the subject of the present controversy. It conveys all the personal property of the grantor to William McCammon and Jonathan H. Barker, in trust, for his grandchildren, without making any provision for his wife, thereby effectually excluding her from any participation in the trust.

It was fully proved that the object for which the real and personal estate was thus transferred by separate instruments, was to prevent Mrs. Summons from receiving the distributive share of the personalty, which is allowed by law when the

William McCammon et al. Trustees, etc. *v.* Prudence Summons et al.

wife survives her husband. This was avowed both before and at the time he created the trust, and is testified to by one of the plaintiffs.

Mr. Summons died on the same day he made his will, and within an hour, at the farthest, after the execution of the deed of trust.

Mrs. Summons, the widow, files her answer denying the right of her husband to deprive her of her statutory right, by such a disposition of his personal estate as that contained in the deed of trust; alleging it to have been made in fraud of her legal claim to a distributive share.

Her children have also set up their claim as heirs-at-law, and insist that their father died intestate, as to his personal estate, thereby leaving it to be distributed as is required by the statute of descents and distribution.

*Mills & Goshorn,* for plaintiffs.

*Thos. M. Key* and *C. W. Woolley,* for Mrs. Summons.

STORER, J. The questions involved are not only important, but are alike novel and interesting.

It is proper to understand in the first place the precise claim of the wife when she survives her husband.

By section 180 of the act " to provide for the settlement of the estate of deceased persons," the widow of every intestate, who dies childless, is entitled "to all the estate, as next of kin, which shall be subject to distribution." If he should leave issue, her portion is limited "to one-half of any sum not exceeding $400, and one-third of the entire residue."

By section 45 of the Will's Act, Swan, 1030, it is provided "if the widow fails to make her election under her husband's will, she shall retain her dower and such share of her husband's personal estate, as she would be entitled to by law in case he died intestate."

We have, heretofore, in the case of Hartshorne's estate, which was very elaborately argued, and all the questions involved fully considered, both in special and general terms,

decided what construction should be given to "the statute of descents and distribution," "the act for the settlement of intestate estates," and the "Will's Act," so far as the right of the widow in her husband's personalty is concerned.

We held she could not be defeated by her husband, unless by an absolute disposition of the estate in his lifetime, made in good faith, and not for any sinister purpose. We regard the wife as sustaining the relation of *quasi* creditor, as well as entitled, as next of kin, to her distributive share in her husband's personalty. The right is secured for her support, she may rely upon it when she marries, and, in the confidence of its security, feel that she is not at the mercy, the caprice, or waywardness of her husband. He can not leave his fortune to others by will, unless his estate is charged with an honorable maintenance for the wife and the mother.

A very strong analogy is furnished, by a reference to the customs of London and York, by which the widow of a free man and her children are alike entitled to a distributive share of the husband's personalty.

It is held, the rights of the widow and orphans, under these customs, are in the nature of those of creditors, and where a loss happens to the estate, by reason of the insolvency or mismanagement of the executors, it shall fall upon the testamentary part only. *Fairebeard* v. *Bowers*, 2 Vernon, 202, in notes; *Deakins* v. *Buckley*, Ib. 240; *Read* v. *Duck*, Pre. Ch. 409; 2 Ld. Raymond, 1325, *Redshaw* v. *Brasier;* 2 Bac. Abr. 256, Custom; 7 Viner Abr. 216; same title (B. 9), 3, 4.

Assuming, then, the widow's right to be in the nature of that of a creditor to the estate, can it be defeated by a voluntary conveyance of the husband's personalty without being met by the ordinary rule, which avoids all such transfers, if the creditor is to be prejudiced by allowing it to stand? Surely, no such principle can be claimed; it would be in violation of every established rule of public policy and opposed in its letter, as well as its spirit, to the statute of frauds and perjuries.

If, however, we regard the real purpose of the trust now sought to be set up, can we, with the testimony before us, so clearly establishing the husband's intention to defeat the wife's statutory claim, decree for the plaintiff?

In the many cases decided under the customs to which we have referred, the chancellor has, without exception, held the transfer or conveyance as fraudulent, if by its express terms or by implication such a construction must be given to the transaction; and, if an intention thus implied is sufficient to set aside the transfer, there can be no doubt of the legal result when the fact is admitted, or clearly established, *aliunde.*

Thus, in *Tomkyns* v. *Ladbroke*, 2 Ves. Sen. 591; *Coomes* v. *Elling*, 3 Atkyns, 676; *Smith* v. *Fellows*, 2 Atkyns, 62, 377; *Turner* v. *Jennings*, 2 Vernon, 612; 7 Vin. Ab. 252, pl. 11; Roper on Husband and Wife, 16; 2 Wm.'s Executors, 1014. We find in the case of *Ligthfoot* v. *Colgin*, 5 Munford, 42, the same question involved here discussed, and the same question similarly decided.

We may well hold, then, that the wife can not be barred of her claim by the trust now attempted to be set up by the plaintiffs.

We suppose both the will and the deed of the trust are but one transaction, made during the last hours of the deceased, and intended to effect a disposition of his personalty, in direct opposition to the law, which gives to the wife a definite interest in her husband's property at his decease.

To use the language of some of the cases, the deed of trust was but a will in disguise, and would be held in England to be a testamentary bequest, or the duty payable to the State would be defeated. *Attorney General* v. *Jones*, 3 Price, 368; *Gaskell* v. *Gaskell*, 2 Y. & J. 502.

No particular language is necessary to constitute an interest, a testamentary one, and no contrivance, such as the multiplication of papers, can conceal the purpose intended by the party who executes them. 1 Wm.'s Ex. 55, 56.

It will be seen how carefully every attempt at evasion,

however laudable may be the object, is considered by the court, when the rights of the parties, or the law of the land will be impugned or violated. The substance is never sacrificed to form, and while the rule of equity is to hold that to be done which ought to be done, another is equally true, that parties will be held to mean what they have said and done. By their admissions, as well as their acts, their intentions are to be determined.

Whether the deed before us was ever delivered or not, to our apprehension, is immaterial; and so, whether it was revocable by the grantor, had he recovered, is equally unnecessary for us to decide. Indeed, it may be doubted whether any legal transfer of the personal property passed to the trustees; and if only an equitable right, how can the title to stocks and other personalty, passing by indorsement or delivery be completed, where there is no valuable consideration to support the contract.

While we refuse to set up the trust, as against the wife of the decedent, we decide nothing further. The children and grandchildren may urge their claims upon the grounds stated in the answer. These grounds are not covered by our present opinion, and have not been considered in our examination of the case.

While we are thus compelled to decide adversely to the plaintiff, we could have wished it were permitted us to vindicate, in some of its aspects, the object of the husband in thus disposing of his estate. He was evidently a heart-broken man; upright, industrious, and painstaking through a long life of toil and adventure, yet a sufferer by a visitation which a parent alone can understand. He had not actually outlived his children, but all, save one, were dead to him, and at last he was separated from his wife.

We may well commiserate his condition, and understand why it was he desired his property to be thus distributed. But we have a legal duty only to perform, and must discharge it impartially.

Decree for defendant.